Case No. 23-3017, United States of America v. Kyre Fields, also known as Kyre Fields, also known as Kyre Fields Appellant. Mr. Searby for the appellant, Mr. Goodhand for the appellant. May it please the Court. Bruce Searby, CJA Counsel, appearing for Appellant Kyre Fields. Your Honors, I'd like to reserve two of my allocated ten minutes for rebuttal. I'd also like to make a brief dedication of my oral argument to Mark Rochon, a giant of the public defender community, who along with his then partner Gary Coleman hired me out of college as a defense investigator and inspired me to become a lawyer. And he passed away tragically a few weeks ago and is going to be his funeral service this weekend. Just want to tell you where I'm going. I want to first address the judge's lack of consideration of mental health raised by the defense. And second, I want to talk about the ineffective assistance of counsel for counsel's failure to work up appropriately the mental health issue that they had flagged by working with an expert. And it's key here that the district court varied upwards in its final sentence from the guidelines range that had already taken into consideration many factors that the court explained as part of its sentence. First, let me talk about Mr. Fields' argument that a district judge must show more sign of his or her consideration of a defense sentencing argument unless perhaps the court gave out a guideline sentence. Here, there was prejudice to the substantial rights of Mr. Fields. There's a reasonable likelihood that a sentence would have issued differently but for the error of the judge in not considering the issue of mental health. The cases of this circuit and the Supreme Court show how mental health is important to several different issues at sentencing. History and characteristics of the offender, the need to provide defendant with medical care versus extra incarceration, whether mental health contributed to the commission of the offense. Suppose it did. Suppose that mental health contributed to the defense, then there would be a potential downward departure. Really? Do you think there should have been a downward departure for, say, Ted Bundy because he had a screw loose when he was committing all his murders? Well, your honor, the guidelines do provide for this argument. Now, in Ted Bundy's case, I might differ, but the guidelines which apply to all defendants... They say considerate and then they don't say downward departure. Well, your honor, I do think that the type of mental illness that clouds someone's judgment and leads to them potentially... Makes them more dangerous, doesn't it? And more likely to commit an offense once they're released. That's not a reason for downward departure, that's a reason for upward. Your honor, that goes to the next factor, which is that a criminal history can over-represent the seriousness of a prior offense that is taken into consideration by the court. If there's mental health issues, if you treat mental health, you can mitigate those types of criminal history facts in someone's background that might otherwise lead to a harsher sentence and a judge's opinion. He had been treated, examined and given medication, I think, on two different occasions and then he just stopped taking the medication. So, what then is the role mental health of a person is not sticking to treatment plans? Your honor, failure to comply with medication regimens is something that we all know about. I think the court knows that part of the struggle of mental health treatment is dealing with anybody, anybody from any type of background who fails to take their treatment seriously. Now, that doesn't mean that you give up on that person. No, no, no. But then what was the district court supposed to do here under the under the guidelines or the sources you're relying on? Does, as Judge Randolph has suggested, shortening the sentence doesn't seem to address mental health issues at all. And unless you're going to have sort of someone referred for to a mental health treatment within the Bureau of Prisons, but that's not a shorter sentence. That's a different sentence as in where it's recommended that you be incarcerated. But I'm not sure that's the same thing as the downward variance issue here. I didn't see you arguing that he should have been sent to a federal facility where he could receive mental health. That's very much where I was going, your honor. Absolutely. You not only, not put the person in longer so that they develop more aggression and more dangerousness to the community and to people within prison. You give them an appropriate level of incarceration and then put them out in targeted mental health treatment, exactly as you were suggesting. That's very much where I would have taken this case. If I were the defense attorney, I would that he undergo mental health treatment and the mandatory is a part of his supervised conditions. So I guess that indicates that the judge did get the message from the PSR about mental health treatment and did, just as you said, provide it at the end of the incarcerated term for mental health treatment. I think that's a boilerplate inclusion of that language, your honor. Maybe boilerplate for somebody, but if he really needs it, then it can really, you know, it is an enforceable term. I think that if the district court is taking... It's enforceable, right? It's enforceable, but it's not robust, your honor. What I would have argued for is a more robust provision and it could have been taking place while the defendant is still in the Bureau of Prisons. You don't have to have black or white in terms of no mental health treatment until you get out. There can be different programs. But that's not a shorter sentence. That goes to, I mean, the district court judge could have said, you need a long sentence because you are a danger to the community and you don't stay on medication when it's given to you. But I'll recommend that they house you at X facility, but that doesn't change the argument about how long the sentence... That doesn't show error in the length of the sentence. Again, I think if you point to what the experts can say about the effect of increased incarceration upon someone, you are making the problem worse by responding to the dangerousness issues that Judge Randolph correctly wants me to address by saying, that's got to mean a longer sentence because that can actually make the whole dangerousness situation much worse. And this is just one of the issues at sentencing that mental health impacted. There were, as I pointed out, others. There's the looking back on past behavior and saying, oh, well, this is the worst of the worst. And this means this person should never see the light of day. No, the mental health picture in the hands of an expert could actually explain some of those incidents and explain not only why they happened, but how treatment can prevent that kind of thing from happening again. So there is a panoply of sentencing issues tied into mental health and a diagnosis, a proper diagnosis at the time of the sentencing. Is the argument reduced to whether that treatment is done on supervised release or as part of the incarceration term? No, I think that whether it's done on supervised release or part of a recommendation that comes from the judge, if the judge had actually been considering this to the Bureau of Prisons to give special attention to this issue while in the Bureau of Prisons, then you would have had a different outcome and, of course, not very upwards. So the big problem here is the judge took these issues that stem from mental health and went upwards in the guidelines. It's not just merely a case where the judge landed in the guidelines and we wanted less. So that's the prejudice from this lack of consideration of the mental health piece is that we went up, not down, and certainly we didn't stay in the guidelines either. And the judge went into great detail about so many things. And I think that speaks to the fact that he did not consider mental health because if he had, we would have known about it. Why don't you talk about your ineffective assistance claims? Absolutely. So briefly back to Mr. Rochon, if there's one thing that I got from working in his shop, his and Gary Coleman's shop for two years, was that if you could do nothing else for a client who is charged with a crime, if you couldn't save them from liability in prison, you could always do something to give them a fair and appropriate sentence. And here the federal defender has not done so. And it teed up an issue and then it whiffed on that issue. It didn't do something that the government can't even think of an explanation for why the federal defender didn't do this mental health evaluation. It simply didn't, can't come up with anything, certainly didn't in its brief. It pointed to a case, Burroughs, where the court found deficient performance by a defense attorney who had not raised- The court assumed it without the citing as the way I read that case. Okay. You may be correct, Your Honor. But the prejudice prompt, there the court apparently had plenty of information about what the defense was and the context and decided that there wasn't any prejudice from that defendant not being able to make mental health evaluation before sentencing. Well, we're in a completely different situation here. And I think I've pointed out how many different sentencing issues were likely or possibly impacted by this failure. And I think that here, again, the government can't even imagine a reason why that defense lawyer didn't raise the issue. I'm going to reserve the rest of my time. Can I ask you one more quick question? Yes, Your Honor. So what counsel did here was argue of a different, tried a different approach to getting the sentence in the range that they he's on an upward trajectory. He's gotten his- I think he's obtained his GED at that point. He's found he has a daughter. He's trying to get himself in order, get his life in order. He wants to be a good example to her. He wants to cut this behavioral trajectory off now. You couldn't make that argument if you- I mean, that's just inconsistent with an argument that he can't control his behavior because of mental health, right? You can't have both of those. The choice had to be made between those two options, which might be more persuasive to Judge McFadden. I do disagree. I think that they pair, they couple those two arguments with- did couple. In fact, the defense attorney did raise mental health. He just did a half-baked job of it. And, help in order to stay on track. And that's common sense, Your Honor. And I think that, you know, this defense attorney who he had did a lot of things right. But, you know, basically what we're saying is that the thing that they didn't do was left such a gaping hole in this defendant's representation before the sentencing judge that we cannot call that effective assistance to counsel. I would love to have a chance to respond to the- Yeah, give me a couple minutes. No further questions. Thank you, counsel. Good morning, Your Honor. It's David Goodham for the United States. If I can address the in reverse order, focusing first on the ineffective assistance of counsel claim. The government full well understands that Rashad sets a fairly low bar for remand for a chance to develop the factual record. But Rashad does say that to raise a colorable claim, the defendant must make factual allegations sufficient to show a violation. And then this court's decision NSQ goes further and I think gives meat to the bones of what a colorable claim in the context of a failure to investigate is. And at 88 F-3rd at 1073, NSQ says to show prejudice a defendant based on an ineffective assistance claim on his counsel's failure to investigate must make a showing as to what the investigation would have produced. And even- NSQ was a case after a full hearing and after they had had an opportunity to investigate the ineffective assistance claim and present to the trial court what they think that the deficient performance was. Sure. Not even out the gate yet here. Right. And I full well understand different procedural posture. My reading of NSQ though is that to make out a colorable claim on an argument of failure to investigate, you must at least point to some facts. You don't have to prove actual prejudice at this stage, 100% agree with that. But you must be able to show some facts that would have supported the mitigation arguments my opponent has posited. And I would direct the court- How does that work on appeal here? They're supposed to, he's supposed to have gone, I guess on his own expense and hired a mental health investigator, hope BOP cooperated, get the whole mental health evaluation, then come show it, tell us what these facts are. I don't understand how this is supposed to have worked. Well- For purposes of briefing here. I can answer that by grounding it in the facts here. The district court knew a lot about the mental health issues associated with the defendant. He'd had two mental health assessments, one when he was a juvenile and one when he was incarcerated in 2017. The diagnoses there were attention deficit disorder, number one, and mood disorder with depression is what it said. It would have been a very simple thing for defense counsel, for example, to go to the DSM and articulate why these, and his mitigations arguments are at 47, 49. It would have been a very simple thing for him to support the mitigation arguments he said were lacking here, which were his serious, excuse me, his serious mental health issues. He cites a journal article and he says, it's well-recognized that serious mental health issues exacerbate your in-prison time, make you susceptible to disciplinary infractions, and maybe even explain, for example, the jail stabbing. But that same journal article, and this is 130 Journal of Criminal Law and Criminology at 151 Note 1, says, quote, the typical offender does not have serious mental health illness, and just 14.5 percent of male inmates- I'm sorry. I don't understand. I'm not understanding what you're arguing should have happened here to get these facts. Are we supposed to resolve whether that article helps or not? No, absolutely not. He goes and he's done the legwork. He's found this article. There's, you know, unless we're certain that that's not what happened here, we aren't going to play these percentages. That's not how we do it at this stage pre-hearing. So I'm still not clear when you say he had to come forward with facts before this court, as opposed to a colorable basis, I think is our test, for thinking that a hearing, you know, an investigation into these facts is warranted. Now maybe that investigation would come up that he's in the 86 percent, if I got your statistic right, or maybe it'll come up that he's in the 14 percent. You don't decide that at this stage. No, but again, I think it's not asking too much in the failure to investigate context to be able to point to some facts that are just beyond rank speculation, and that's all we've got here. Rank speculation? The guy has mental health problems. He does. He's been evaluated twice. He's been medicated. Absolutely. It's not just, I mean, I don't know what more we need than the probation office itself said, this, you may want to think about a term word variance because of mental health issues. So I don't think this is a case where he needed to build a record that there are mental health problems. I don't think Judge McFadden disputed that there were mental health problems. So the question is, did counsel drop the ball? And in U.S. v. Thomas, we held that when the probation office itself and its PSR flagged a potential downward variance and counsel didn't do anything with it. Defense counsel did nothing with it. That warranted investigation into effectiveness of counsel. Sure. Isn't that exactly this case? It's not exactly this case. I mean, we have a pretty significant argument premised on the mental health issues from trial counsel below. No sophisticated argument. There's occasional, some generic stuff about PTSD, which I assume you would not think is sufficient. And that's about it. And in fact, he's talking about what an upstanding citizen he wants to be. Sure. And he took his GED and there's no reference there to that he can't conform his behavior without the assistance of mental health. I mean, there's a strong record here of, I said, two evaluations, two rounds of different medications. Again, sorry to interrupt, Your Honor. But those evaluations I would suggest come up with diagnosis that don't even fit in the template that is provided by the journal article that the defendant himself has cited. I think you're making this more academic than it really, and this isn't an academic issue. The reason that the PSR said that you may want to consider a downward or at least is eligible for the downward departure is because for the documented history of mental health problems is that policy statement and the downward departure guideline, et cetera, talks about the need for treatment and talks about mental health and other conditions that are way out of the ordinary spectrum. And the whole point of sentencing and the whole point of the set of circumstances. One thing that Judge McFadden said at sentencing was basically like, you've had all your chances. You're out of chances. You know, I hear all this stuff about your bad childhood. I hear that a lot. You know, I'm up, departing upward. You're talking about mental health in the context of is it going to mitigate the offense or explain some sort of like technical argument. What the guidelines are getting at is when you have somebody who has extensive mental health problems that haven't been treated, is it really appropriate to say you've used up all of your chances? And is it really appropriate to vary upward from the guidelines when perhaps what the investigation would show is that actually there were a bunch of chances he didn't get. You know, he wasn't even hospitalized and we don't even know whether he was treated after the suicide attempt at seven years old or elsewhere. So it just provides an opportunity to present a different side of the coin here. And all we're talking about is whether it would have potentially impacted the sentence, even if it impacted six months or 12 months. That's prejudice, right? Yes. I understand. And to be clear, this is not a hill the government wants to die on. I understand that Rashad is a very low standard. My core point here is that the failure to investigate claim is very susceptible to just saying could have, would have, should have. I understand that there is a record here already, two mental health assessments and diagnoses. My point is, is that trial counsel did a lot with that record and tried to bring it to the fore as a mitigation argument. Judge McFadden recognized the very difficult childhood that this defendant had experienced, and he still thought it was appropriate given his recent conduct to vary upward. Mr. Goodhand, I want to direct you to another aspect of the ineffective assistance. I haven't investigated since Rashad. I was one of the members of the panel. But back then, we were the only circuit in the United States that allowed direct appeal evaluation of ineffective assistance. Every other circuit at that time said, if you want to bring such claim, you've got to do it in habeas, right? Do you know whether that's changed at all? Are we still the only circuit that allows a direct appeal? I haven't done a survey. I think you are, but please don't quote me on that because I didn't do the Westlaw research before this, but it's certainly the lore in my office that this circuit is unique in that respect. Obviously, I'm sorry. I just want to follow through on the ramifications of that. Let's suppose that you prevail here, and we have all this doctrine that has been built up because of allowing a direct appeal about when you send a case back to the district court. You've got to make this showing. You've got to allege facts and all that other kind of stuff. But if you prevail here, is it the U.S. attorney's position that nevertheless, Mr. Fields can bring a habeas action claiming ineffective assistance without having to go through all the hurdles that over the years our court has interposed? That's my understanding of the impact of Rashad is that that gives you that first bite on remand to have a factual record without using up your first 2255. He could make this argument in a 2255 context. And if he did so, he would be back before the district court. He wouldn't need our permission to have the district court evaluate it. He could bring the action in habeas. And if the district court thought a hearing was appropriate, the court could order it, which seems to me a rather orderly process rather than going through all this fandango about what you alleged and what you should have done and this and that, as you point out. That's correct, Your Honor. And I see my time's up. I don't want to belabor this point too much, but I am just suggesting this court understand the implications of in the context of to investigate, not requiring some sort of significant sort of definite factual allegations that would show how the investigation might have led to a palatable, I'm sorry, a palpable mitigation argument. Do we have any indication in the record that defense counsel actually sought and obtained any of the prior mental health assessments? We don't know anything about that. The PSR said that the downward variance may be warranted based on the documented history of mental health problems. Did the defense counsel seek a downward variance based on mental health problems? I, my opponent will be able to answer that better than I. I think it was, I think it was discussed, the sentencing, but the more general gist of his argument was in support of mitigation, his background and characteristics justified his mental health issues, justified his violent And the fact that you can't just answer yes to that, to me, argues in favor of there being at least a colorable claim of ineffective assistance. If, if, if the probation office identifies the grounds for variance, but the defense doesn't even like clearly make that argument in favor of variance, is that objectively reasonable? Well, again, my, my opponent who knows his case better than I do, I apologize, will be able to answer whether I just can't answer that right now at this joint juncture, whether or not that actually was made. But certainly mental health was a significant focus at the sentencing. Let me ask you this, ask it this way. Is it objectively reasonable performance for a defense lawyer to not make an argument in favor of a variance downward that was identified by the probation office in the pre-sentence report? You know, I, again, Answer that yes or no. I, it's difficult to answer that yes or no, only because there are many different factors that go into the assessment of, we have a significant presumption of reasonable strategic decisions that Strickland teaches. In this case, I can posit a very easy and simple strategic decision that supports this defense counsel not asking for an expert, for example. He looked at the mental assessments. He saw the diagnoses, attention deficit disorder, and mood disorder with depression. He then perhaps went to the journal article that my opponent cites and noted that the studies indicate that serious mental illnesses can justify perhaps disciplinary infractions in prison. And he said, I don't have any record of that. I'm not even going to get funding for an expert. So I'm not going to go down that road. Instead, I'm going to argue history and characteristics. So my point is. You just conceded or just said to me that we don't have any evidence in the record that counsel actually even had those assessments. My answer was in response to your suggestion that I concede that a failure to make that decision on the part of defense counsel in the face of the PSR saying this might be a variant is not possible when you have the presumption of reasonable strategic decisions on the part of defense counsel as taught to us by Strickland on the one hand, and we have a very robust sentencing mitigation argument made by defense counsel on the other hand. So that's my only response is into your suggestion that I can The mitigation argument, the downward variance, neither was based on mental health. And I would have thought the answer to Judge Wilkins question would have been U.S. versus Thomas, where it was worth it was actually found conclusive evidence of deficiency here. We're not at that stage or at the prior stage of whether that was where again ignored a PSR recommendation just didn't do it at all. And so the only question for us is whether having dropped the ball on the PSR may actually have been dropped the ball on the PSR recommendation. Is there a culpable claim that's worth that merits investigation? That's all we're deciding at this stage that investigation can produce the things that you are saying could produce strategic judgments. Sure. No questions? So what we know from the PSR is that a mental health assessment was done at the D.C. jail in 2017. In 2017, Mr. Fields was 17 years old and he had been arrested in November for in connection with the armed robbery offense. And so based on all of that, what it appears then is that there was some sort of intake assessment done at the jail, which is done where they find out what medications people are on so that they can make sure they get them those medications and then they can get a sense of their self-reported health history to take that into account for how they might house them, et cetera. That's something that's done over the course of probably two minutes of evaluation, assessment. That's why it's called an assessment. That's completely different than an evaluation. It's apples and oranges. It's kind of like what we talked about in Chavis, about a competency evaluation being completely different than the defense expert hired to pursue an insanity defense. They're two different things. So given what it's reasonable to surmise the 2017 mental health assessment at the D.C. jail was, you made the argument that the judge wouldn't even order an evaluation because that assessment had occurred. Explain that argument to me. That wasn't my argument. My argument was Strickland teaches that defense counsel make decisions all the time on the available information about which defenses to pursue, which mitigation arguments to pursue. And my argument, simply in response to your Honor's question, was based on the mental health assessment from the D.C. jail that you've just described, I totally agree, not a 24-hour evaluation, for example. But also, the PSR does refer to another mental health assessment that was done when the defendant was younger, and that's where we get the diagnosis of mood swings. My only point is, we can posit a scenario where defense counsel looks at that record and says, I've got two assessments. They're talking generally about mood swings, mood disorder. Maybe I should pursue another mitigation argument, which he did. I'm not saying that necessarily that would have precluded the judge from granting him the funds for an expert. I'm not suggesting that necessarily would have precluded him from asking that in a non-frivolous way. All I'm saying is that Strickland teaches that we have a presumption about how defense counsel operate in a reasonable fashion and make reasonable strategic choices. This record suggests, for sure, suggests that this defense counsel made a number of reasonable choices. That's my only point. And I'll finish with this, unless, of course, court has any other arguments, I mean, questions. But, you know, I focus most of my argument on the prejudice prong, because what I haven't seen in the record is any suggestion that an investigation would lead to information that would have moved the needle on a mitigation argument relating to, for example, the in-jail stabbing or his disciplinary infractions, which are the only mitigation arguments he proffers at pages 47 to 49 of his brief. All the evidence, if I understand your point, all the evidence regarding his mental health was before Judge McFadden. The only thing that wasn't before Judge McFadden is a label put on by a psychiatrist. I think that's, in essence, that we know there was a significant body of information the judge had. We know from piles that we have to assume he considered it. He did order mental health treatment, so we know, in fact, he considered it. He decided that didn't answer the question of why this defendant, you know, who had a prior felon in possession then on supervision, escaped from his halfway house and stabbed a jail inmate. But again, I've gone way over my time. I have a question following up on Judge Randolph's questions about habeas. If we reject remand here based on our case law, it would have to be based on that there's no colorable claim from what we see of ineffective assistance. So why would it be the case that if that's what we do and then Mr. Fields files his habeas petition, the government just says collateral estoppel, no colorable claim, deny the habeas petition? I'm not an expert in collateral estoppel, haven't thought about it, but my point is that in the context of a 2255, the defendant could do what he hasn't done now, which is develop the record and point to specific facts that an investigation would have uncovered. That's it. Does he have an attorney for a 2255? I think that's in the court's discretion. Yeah, so he might not have an attorney. Right. And the person with mental, let's assume for these purposes, the person with significant mental illness is supposed to develop the facts, per se? It happens a fair amount, Your Honor, but again, she could also ask for counsel. All right. Unless there are any further questions, I would ask that the court affirm the judgment below. Thank you. Thank you for tolerating all our questions. Mr. Shoeby, I think you asked for two minutes. Is that correct? Yes, Your Honor. Thank you very much. I want to start with the whole notion advanced by government counsel that this was the result of a strategic decision by counsel below the Wiggins case. It makes very clear that strategic decision requires adequate investigation. You cannot make, you cannot enjoy this presumption that you, defense counsel, made a strategic decision and wasn't being ineffective. Why wasn't, why weren't these assessments that were in the record enough? Well, Your Honor, they were old. They were pre-COVID, which explains why we can't rely upon those assessments to address his either current situation at the time of sentencing or when this violent event took place that was counted against him. Do you know how thorough these assessments are? No, but they can be presumed to not be what he would get if he were given a proper expert evaluation as should have been the case. So we don't have an adequate, any indication of an adequate investigation. In fact, there was a failure to investigate the counsel for the government wants us to make factual allegations, which would have to come outside the record of the district court. And the court of appeals isn't supposed to consider facts outside the record on the district court. I have my appellant appellants in appendix here full of what I could find on this. I can't take something I find in the What information bearing on your client's mental health, excuse me, was not before Judge McFadden? Well, Your Honor, that is would have been determined by an expert and we can't develop the record. And that's not the role of the appeals court. As far as we can tell, every piece of information that was relevant to his mental health was before Judge McFadden. Is that a fair statement? That's not a fair statement, Your Honor. I hate to say what evidence was there that was not before Judge McFadden, which was my question. Well, that would have had to have been discovered through adequate investigation. It gets back to my point. You can talk to your client. I well, Your Honor, I could tell you, couldn't he? Your Honor, that is, in my understanding of appellate procedure, not the way it happens. And I could tell you that I could tell you that my client requested a mental health evaluation. Well, I know this is a unique situation because we are in a position almost of being a district court making a decision about whether a particular claim has merit or not. But nevertheless, given that unique situation, there's nothing that would bar you from getting an affidavit from your client. There is nothing that would bar me from exceeding the the district court record for purposes of this appeal. Okay. Thank you. Thank you. Mr. Kirby, you were appointed by this court to represent Mr. Fields in this appeal, and we are grateful for your assistance. Thank you, Your Honor. The case is submitted.
judges: Millett; Wilkins; Randolph